Next to Appeal Number 22-1583, Nulogy Corporation v. Menasha Packaging Company, LLC, et al. And we'll have Mr. Lin when you are ready. Thank you, Your Honors. This is Terrence Lin of Gardner-Lin for Plaintiff Nulogy Corporation. This is an appeal from the Northern District of Illinois due to the improper dismissal for form non-convenes based on a motion by two of the defendants, Menasha. There was also a motion brought by two of the defendants, Deloitte, for a 12B6 type of motion which was dismissed as moot. This is a trade secret case that relates to a Nulogy's computer directed tool that they call the Nulogy Solution. It's a supply chain management tool that allows a company to track inventory and its production status, et cetera. Nulogy had licensed the Menasha companies for using the Nulogy Solution at a limited number of facilities. It was installed and used and employed for a number of years by Menasha. In 2015, however, Menasha came up with a new project. It was not just an extension of the existing license. It's not a matter of saying, well, we want to use the Nulogy Solution at some additional facilities. The new project that they referred to as Project Zephyr was Menasha and its workmate, Deloitte, were going to come up with a single system that would interface with and implement the Nulogy Solution as well as other systems. And it was going to be an integrated operating platform. It was transformative and it was not just a matter of we're going to use the Nulogy Solution. It had to interface with it and interact. For this new project, Menasha issued a confidential request for information. They needed information as to how the Nulogy System was set up and how it functioned. It was different than tell us how to use this Nulogy Solution. You get that with a license. For this particular situation, they're coming up with something new and they need to know intimate details about the flow patterns and the organization of this Nulogy Solution. That's not information that would be given with a license. Mr. Lynn, obviously the merits are not before us. It's helpful to have a little background. Could you tell us, in essence, why the choice of forum is so important to you all here? Yes, it's critically important in that Deloitte adamantly asserts that it is not subject to Canadian jurisdiction and that if this case goes forward, well, it does not go forward, Deloitte will be outside of the case. How do we know Deloitte is not subject to jurisdiction in Canada? Do we have anything other than their bare assertion? I mean, no court in Canada ruled on it. You all didn't wait. That's correct. In fact, Nulogy was in a position that it couldn't wait. If the Nulogy were to and did accept Deloitte's assertion that they were not subject to jurisdiction in Canada and that the proper forum was in the United States, if they didn't do that and they instead contested in Canada, by the time the resolution of that issue in Canada was finished, then the potential for statute of limitations would have run and they could not have brought a trade secret action in the United States. What about the prospect of a stay? What about simultaneously filing an action in the United States and asking the court here to stay the proceedings here while the issue of personal jurisdiction is hashed out in Canada? We didn't do that, Your Honor. At the point in time that the motion was brought, they were just saying the court should get rid of the case in its entirety. Look, there's no perfect solution to this problem. Right? No. It's kind of an elegant problem in a way. You've got two defendants. Each has a very strong argument against one of the forums in question. Okay? So, either you have to override one of those arguments or split the case up. And one option is you go forward in Canada against Menasha and we remand Deloitte to the Northern District of Illinois for pursuit against them here and maybe that gets stayed and maybe not. That would be an option because it would preserve the ability to go after Deloitte for the trade secrets here in the United States. The concern, a sincere concern, is that if the case is dismissed in its entirety as to Deloitte, they are out of it home free because we've got statute of limitations issues that would run. So, that solution would at least address that problem. Now, this court's precedent is pretty solid that there has to be an available alternative forum for all defendants. Now, you're relying on the Debb case, right? That is correct. And that did not involve a contractual forum. That is true. That seems to me a problem for you because if you can override a contractual forum clause simply by adding another defendant who's not a party to the contract, then those clauses aren't going to be much good to anybody. Well, they are, Your Honor, in that what was added was a company that was intimately involved in the activities dealing with the trade secrets. The trade secret claim is separate and distinct from the contract claim. Well, as a matter of legal theory, yes. It still, frankly, seems to me to be a claim in connection with the agreement. Well, the cases that are dealt with in connection with are ones in which there is some clause or clauses in the agreement that directly relate to the cause of action. Well, okay. We would argue that in connection with it is more narrow. I know the argument. I'll just tell you, I'm skeptical about it. Your argument asks us to ignore your very complaint. I'm sorry. Your argument asks us to ignore your very complaint, which cites the license agreement. Well, the license agreement is certainly background, and it reflects the time... It's more than background. It's the reason why NULOGY actually provided the information in the first place, right? Absent the license agreement, I presume NULOGY would not have provided the information to the defendants. Yes, in part. I'll answer that directly here. The NULOGY computer program was provided, and they taught them how to use it as part of the license. That they would have done, but as a result of the license, they would not have told Menasha and Deloitte,  Here's the organization and the operation and the functionality. That was something different in a different post-Project Zephyr program. What the situation was, is that because Menasha and NULOGY had a past relationship, NULOGY was in a position that they trusted them. Now, were they stupid to trust them? Apparently. But they were prompted to provide additional information that's not necessary under the license to run this equipment. It was transformative as to the workflow and the way that the actual programs and solutions operate that they were trying to get and that they use. It's the computer in your office. You know how to turn it on and run it and make it do all the programs, but you don't have to know what goes on inside of that box. That's how you have that information organized inside the box. That's the difference. So, yes, as a backdrop, Menasha never would have had their hands on the NULOGY solution, but for the license. But with just the license and the NULOGY solution in hand, they wouldn't have been able to replicate it. Perhaps there had been a way to tear it apart in some fashion, but that's not what they did. They went to NULOGY and said, we've got a new project. It's going to be future agreement. You're going to have a whole new set of activities and agreements. And we will, you know, tell us how your system works and we'll interface with when we come up with our new program, we'll be able to interface with the NULOGY program. And now we'll have a new set of agreements, projects, opportunities, what have you. It is not just simply here's the NULOGY solution. Here's how you turn it on and this is how you operate it. When it comes to, and I cycle back to the availability, in this case, if Deloitte is released in its entirety, there has not been a statement of what Menasha will or won't argue necessarily in Canada. But as sure as I'm standing here, Menasha will say, if something happened, it was Deloitte's fault. And Deloitte's not here and we didn't have anything to do with it. And that's what you're going to see if Deloitte is released from this operation. And Mr. Lynn, even when, getting back to a point that Judge Hamilton raised, I take it that even when there is a contractual form selection provision, the district court still has to engage in a form non-convenience analysis, although modified, right? I mean, there's some shifting of burdens. The district court doesn't have to look at private interests. But the district court still has to go through the various steps of a traditional form non-convenience analysis. That's absolutely correct, Your Honor. And the way it works, and you could debate, do you, which step do you do first? But one way or another, under the form non-convenience analysis, which is the doctrine you're using for implementing the form selection clause. Under the form non-convenience analysis, the first step is, is there an available and appropriate alternative form? So you have to do that analysis. Did the district court do that here with regard to Deloitte? No. We contend the court did not. What we contend is that the court said, well, you voluntarily dismissed Deloitte up in Canada. Maybe you were stupid for doing that, but they represented to you. You did not take it to the bitter litigated end. And therefore, we don't have to make a determination of whether or not there's an available alternative form. So the analysis was short-circuited. Now, under the form selection clause, there's another first step. You have to say, well, in this case, does the form selection clause even apply to these causes of actions? And to Judge Hamilton's point, that's, does this in connection with clause apply to these causes of actions? We've briefed it. We say that it's different, and it does not. That said, whichever first step you start with, and we would contend that since the form nonconvenience is the overarching implementation, you start there, you have to have both availability as to every defendant, pretty straightforward, and the form nonconvenience clause has to apply. Your Honor, I'm happy to take other questions. Otherwise, I reserve my time. Thank you, Mr. Lind. Thank you very much, Your Honors. And Mr. Elkin? May it please the Court. Good morning, Your Honors. Michael Elkin on behalf of the Menasha Appellees. After the district court properly found that the mandatory form selection clause applied to the trade secret claims of Newelogy, it thereafter exercised its discretion to dismiss the case based on form nonconvenience. We submit that that exercise of discretion was appropriate. What I would like to address is really the crux of Newelogy's appeal, which is whether you can enforce a form selection clause where the plaintiff has added an additional party that is a non-signatory to the agreement that contains the form selection clause. In that regard, Your Honors, the starting point is Atlantic Marine, where the US Supreme Court held that when deciding a motion for form nonconvenience, the form clause should control except in the most unusual of cases. We submit this is not the most unusual case where the form selection clause should be disregarded. Under Atlantic Marine, the burden is on the plaintiff to show that the form selection clause should be set aside. And the burden, the initial burden, is not only even on the plaintiff. Under this court's decision last year in IAC Interactive, the court said that the first stop, the first opportunity that the court has to adjudicate this issue has nothing to do with an alternative and available form. It has to do with whether or not there is a mandatory form selection clause and whether or not it applies to the claims. That's exactly what Judge Rowland did here. The Newelogy's central argument against dismissal is based on this notion that the Ontario court doesn't have jurisdiction over Deloitte. But that issue has never been tested. So what? Are they required to litigate that to the Supreme Court of Canada? They are not, Your Honor. So what's the line? I'm pretty troubled by the dismissal of Deloitte here. And I'll ask Mr. Hardman about that. Sure, Your Honor. Well, first of all, they're not required to do it. But by the very same token, they asked the district court and now this court to determine that the form selection clause should be disregarded. We were the ones. Menasha was the one that made the motion. The district court had the opportunity to exercise her discretion to dismiss the entire case. When she did so, she did it pursuant to an Atlantic Marine, a call to the court's attention, footnote eight, where the court said that when you have a Form 9 convenience, when the Form 9 convenience case deals with a mandatory form selection clause, the appropriate measure is to dismiss the case. This court said that. It confirmed that in the Adams versus Raintree case, where the court said, what's it determined? In Adams against Raintree, however, both defendants wanted to be in Mexico and were clearly subject to jurisdiction there. That's correct, Your Honor. Now we've got a situation where Deloitte and you are saying, well, maybe they are, maybe they aren't. Well, Your Honor, that's what happened in Adams-Raintree, if I may, is that the court said it doesn't really matter that Starwood wanted to litigate in Mexico. It said once there is a form selection clause, the Form 9 convenience clicks in and requires a dismissal. But it doesn't really matter whether Starwood wanted to litigate there or not. I believe that counsel for Newell-Chief spoke earlier when he said that both parties moved to dismiss on Form 9 convenience. It was just menace. But in that regard, the standard, again, is not whether or not this court believed that Judge Rowland exercised discretion in a way this court would have. She exercised her discretion. The issue is whether or not it was within the appropriate realm of conclusions that this court has stated in the past. And she was following Atlantic Marine. She was following Adams. Counsel, if I might, yes, we look at her application of the relevant factors to the facts of this case on an abuse of discretion, giving her broad discretion. But we also looked in OVO at whether or not she took the right steps, in other words, applied the right law. And is it your position that Judge Rowland did not have to assess whether or not Deloitte, whether or not Canada was an adequate forum as to Deloitte? That's correct, Your Honor. There's no, not only is there no requirement, the issue is whether or not there is, again, under this court's decision in the IAC. So I take it you disagree with the prior decisions where the court said that when you have a mandatory forum selection clause, that one of the first things a district court has to do is decide whether or not the alternative forum is available and adequate for all defendants. Your Honor, that's not what the case law says. That's what the case law says with respect to where you don't have a forum selection clause. They refer to, and you all just discussed, this issue of Debb versus Cervera, where there was language that was picked up on by counsel in his brief related to that's the starting point. That is not the starting point when it comes to a forum selection clause. I call to your attention, Judge Lee, this court's decision in IAC Interactive that was decided in 2022, where the court said the beginning point is, is there a mandatory forum selection clause? And if there is, does it apply to the claims itself? That is the starting point. Well, I'm looking at, you referred us to Atlantic Marine, and I'm looking at quotes from Atlantic Marine where the Supreme Court said, look, where there is a mandatory forum selection clause, the court does engage in a forum nonconvenience analysis, but that it's adjusted in three ways. First, the plaintiff's choice of forum has no weight. Second, the court does not have to consider arguments about the private interest. And third, that there is a different burden when it comes to who has to prove what. But the court in Atlantic Marine basically said that otherwise the court has to use a forum nonconvenience analysis, other than those three adjustments. Well, our cases are replete that the first thing one has to do in a traditional forum nonconvenience analysis is decide whether or not the alternative proposed forum is adequate and available for all parties. So let's assume for a moment, given your Honor's question, that that's the standard, which I beg to disagree with regard to this court's decision as it relates to ISA Interactive. The test there is whether or not there's an available forum as it relates to the party who signed the forum nonconvenience, which is Menasha. And as it relates to Newelogy, I would just say the following, Judge Lee, if I may. There was a decision made by Newelogy to bring an action against Deloitte and Menasha in the Ontario Superior Court. There is a statement that was made with respect to jurisdiction where Newelogy claimed that the Ontario Court had jurisdiction over Deloitte. They make a decision to do that. And even if you were to apply the alternative and available test, it applies with respect to Menasha. And we would argue, respectfully, that the plaintiff has precluded and has stopped from taking a contrary position with respect to Deloitte. And by the way, they've never taken, they've never made any statement at all that they believe that Ontario is in a proper forum for Deloitte. They've never taken the position that the Ontario Court doesn't have jurisdiction over them. They've been playing games, respectfully. And that's what this court has countenance against litigants doing. There's been game playing, but it's not just on one side. So we need to sort this out in some way that's fair to all the parties. Thank you, Judge Hamilton. I would just beg to disagree that all Menasha has been doing is to make an application to dismiss the case based on the forum non-selection clause that was in the agreement with the plaintiff. It agreed to litigate there. It has abided. Isn't it kind of unusual? Usually, the plaintiff wants to litigate at home, and the defendant wants to litigate at its home. Here, the positions seem to be reversed. Well, the irony is that this is not home for Menasha. Menasha is actually based in Wisconsin. Exactly. But at the end of the day, Menasha is the party that is actually abiding by the agreement, and Newelogy is not. Thank you, Mr. Elkin. Thank you. We'll hear now from Mr. Hartman. I think I should address some of the court's questions, and I'd like to start with your question, Judge Jackson. And your question was, how do we know? And I want to make three points with respect to that question. The first is that we don't, because we don't until a Canadian court would actually decide it, or some other evidentiary battle takes place where it's resolved. Is there any doubt that Deloitte is disputing jurisdiction over it in Canada? My second point is that I want to be very clear that we, yes, are disputing jurisdiction over Deloitte in Canada. I want to be very clear about that. And my third point is that Newelogy is less clear with respect to its position on that point. We have made clear throughout that we don't believe we're subject to personal jurisdiction in Canada. They are far more opaque than that. Because if you look at the record in this case, they don't argue that there's no jurisdiction in Canada. Well, of course not. They want to hedge their bets, understandably, so that they've got you in one forum or the other, right? That's right. And you make no attempt to defend the district court's dismissal of you on forum nonconvenience grounds. Instead, you seem to want us to dismiss with prejudice, right? Well, we do say. We join the arguments of our co-counsel. OK. And we say. Well, sir, let's take the merits here. You are arguing that you want dismissal with prejudice, correct? Yes. On the 12B6 case, I don't see how we could do that. We filed a cross appeal. We did not file a cross appeal. So I don't see how we have jurisdiction to do that or how it would even be right for us to adjudicate the adequacy of the pleading on the merits against Deloitte. If you want us to change a judgment from without prejudice to with prejudice, that takes a cross appeal. Well, I believe that the court could affirm on alternative grounds on 12B6. That's what I'm pointing. That's what I'm asking you about because you didn't, you're asking us to change the judgment in your favor and without having filed a cross appeal. That would apply with a with prejudice ruling. Correct. I understand. All right. Can I address a couple of additional questions on forum nonconvenience because we are an interested party with respect to that. Judge Hamilton, you asked why is it important that there's a forum selection clause. And Judge Lee answered that in the following sense. It is definitely true under Atlantic Marine that if you have a forum selection clause, you have to adjust the analysis. And a principle adjustment is that the burden shifts. And the burden shifts to the plaintiff to establish or to show that a transfer to the alternative forum is unwarranted. So the burden shifts. The burden is now on them. And, Judge Lee, the burden shifts further. The adjustments are further in the sense that they have to do it based on public interest factors, not private interests of their own. And the court made clear that that is not going to happen very often. And the reason that's important in this case, Judge Hamilton, is that Nulogy has argued and has essentially taken a position throughout this case that it isn't their burden. They don't recognize it as their burden. And so they haven't affirmatively taken the burden of showing why transfer was unwarranted, not below and not here. And that's important because the district court was in a tough spot, but she had a record in front of her where it was their burden to show that transfer was unwarranted. And the record was they didn't even try to assume that burden. And so the record in front of her was they had sued us in Canada, so they have to believe that they can sue us in Canada, right? They didn't test that in Canada. Now, maybe they don't have to, but it is their burden to show that transfer is unwarranted. They didn't submit any evidence that there was jurisdiction or that there wouldn't be jurisdiction over Deloitte in Canada. So, for example, in some cases you have expert submissions or affidavits that say, here's what the foreign law is. They didn't do that. Maybe they didn't have to litigate it all the way to the finish line. They didn't, but maybe they didn't have to do that. But they had some burden to satisfy and to show that transfer wasn't unwarranted, and they didn't do that because they want to hedge their bets. Everybody wants to hedge their bets. There's nothing wrong with that. Absolutely. But what's wrong, Mr. Hardeman, with the approach of saying, okay, we enforce the clause for the benefit of the party who is the party to the contract, namely Menasha, but that doesn't apply to you all and they can proceed against you in Chicago? Because on this record, when this court is faced with the decision under Atlantic Marine to decide what to do, she has a decision to make. Nulogy can clearly go, and then she has to decide – I'm sorry, Menasha – and then she has to decide what to do with respect to Deloitte. And here, on this record, where they didn't show that Deloitte couldn't be sued in Canada, which was their burden, it's not an abuse of discretion to say, okay, I'm going to dismiss the whole case. It's not an abuse of discretion. So they have to fight you in Canada over jurisdiction in Canada? I actually don't think it required – That strikes me as a preposterous – They could have submitted evidence that there would be no jurisdiction over us in Canada. They have your assertions, right? You made that perfectly clear. There's no jurisdiction over us in Canada. Why can't they take you at your word? Because from the district court's point of view, our view doesn't control. The district court actually said that. She said they sued us up there. They didn't test it. She has no other evidence to go by on that, and so she says that just begs the question. And it's their burden. So it's not an abuse to say, I'm going to dismiss Deloitte also. It's just not an abuse of discretion under the circumstances because the burden's on them. They didn't even assume the burden. How much would it take? Would they have to ask the trial court for a decision? Would they have to go to the provincial Supreme Court, to the Canadian Supreme Court? At what point would it become an abuse of discretion to dismiss with respect to Deloitte? Plainly, I don't know what it would have taken. If they tested it there and there was no jurisdiction, that would have been evidence plainly that the district court would have considered. If they had submitted an affidavit, that plainly would have been something for the court to consider. They argue now where they didn't argue below statute of limitations. Footnote 8 of Atlantic Marine addresses statute of limitations explicitly and says that in cases where you have a forum selection clause, that's no longer a concern. That's no longer a concern. And so on this record- Did Atlantic Marine involve defendants who were not parties to the contract? It did not. That does seem like a significant factor to me. Well, the question then becomes- I agree with you that's something to consider. The question really becomes does that affect the burden shifting? And if you think about it, it shouldn't. Well, if you think about it, it may, because Atlantic Marine precisely says there's burden shifting because we have parties here to a forum selection clause. In the case of Nulogy and Deloitte, we don't have parties to a forum selection clause. Nothing in Atlantic Marine that I see says that the burden shifts back somehow to the defendant or defendants in the context of an additional defendant who's not parties to the contract. Well, it's silent. I'm sorry? It's silent. I gather Deloitte has a lot of offices all over Canada, right? I understand we're talking about specific jurisdiction for at least American purposes. I actually think Deloitte U.S. likely would not. Deloitte Canada, the Canadian affiliate, likely would, but that's a different entity. Back to Atlantic Marine briefly. I realize I'm out of time. Nothing in it says it should shift back, and if you think about it, it shouldn't, because with respect to Menasha, it still has the forum selection clause, and it should still get the benefit of it. Putting the burden on the non-party to the clause defendant like Deloitte wouldn't make sense, because in some respects, we're a bystander. We're not even a party to the motion below to transfer, and so burden shifting to that party doesn't make sense, and I would argue that the burden shouldn't shift for those reasons. Therefore, at the end of the day, it was their burden to show that transfer wasn't warranted, and on the record before the district court, it may not have been a perfect situation, but on the record before the district court, the court did not abuse its discretion in essentially granting the motion to transfer or the motion to dismiss on foreign nonconvenience grounds. Okay. Thank you, Mr. Hartman. Mr. Lynn, we'll give you your five minutes. Thank you very much, Your Honor. Newelogy did not artificially reach out and put these people together. Menasha is the entity that brought Deloitte and Menasha together. The initial license, Menasha had the license. They implemented it. Deloitte was nowhere in sight. This project's effort was a new project to develop something new, and Menasha brought Deloitte into the picture and said, make disclosures to Deloitte, and Deloitte said, yes, give them to us, and we'll use the information for this purpose, and they used it for a different purpose. There's talk about burden shifting. Well, when we're talking about the foreign nonconvenience and a foreign selection clause, yes, having a foreign selection clause elevates that to a very important factor in the balance, and in some cases, it may be absolutely controlling, but the forum nonconvenience analysis still must be performed, and step one is, do you have an available forum to all the parties? That wasn't done. That was the defendant's burden to establish this alternative forum. If there wasn't an alternative forum, whether we had the burden or not as to show the tipping of the balance, we put in information about the public interest factors, whether that should have carried the day or not, we can debate that until we're blue. In the Deb B. Silva case, there was no forum selection clause in that case. However, the ruling was, we don't know that jurisdiction is appropriate to the defendants in India in that case. They said, you have not consented to jurisdiction or said that it's appropriate. What the defendants had done is they were arguing that, well, we don't have an affiliation with some Indian company that would have given jurisdiction. So this court said, wait a minute. If you're arguing against any affiliation, you might not be explicitly arguing against jurisdiction, but inferentially you are. So therefore, you have to tell us whether you're contesting jurisdiction or not, and that's your burden to prove it. And that's what Deloitte's doing, that while we didn't have to prove anything, it was up to Noology to come in and then disprove the jurisdictional issue in Canada. You know, gamesmanship, Noology brought the action as specified in Canada against both defendants. Trade secrets were asserted there. Deloitte comes in and says, no, we're not subject to jurisdiction here. The proper form is the United States. Silly Noology, they relied on that and changed it. It was, you know, somehow it wasn't an effort to try and gerrymander Noology gerrymandering Deloitte in. They were there in the original action. That said, Project Zephyr was a different new thing post-license. If there's any other questions, happy to answer them. Otherwise, we'd request that the dismissal be reversed. All right, thank you. We thank both the parties. The court will take a five-minute recess before hearing case number three.